UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JORGE JASSO,<br>Defendant. | Case No. 18-cr-00466-BLF-15<br><br>**ORDER DENYING MOTION FOR NEW TRIAL** |

On June 7, 2022, a jury convicted Defendant Jorge Jasso of one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d), one count of conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5), and one count of conspiracy to commit assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. § 1959(a)(6). Jasso moves for a new trial under Federal Rule of Criminal Procedure 33, asserting three evidentiary errors. ECF No. 886 ("Motion"). The Government opposes the motion. ECF No. 898 ("Opp.").

The motion is DENIED for the reasons discussed on the record and below.

**I.   BACKGROUND**

**A.   Charges**

The Indictment in this matter was filed on September 27, 2018. ECF No. 1 ("Indictment"). It charges fifteen individuals as members of a criminal enterprise, consisting of members and associates of the Nuestra Familia prison gang, and Norteño street gangs in Salinas, California and the surrounding areas (the "Enterprise"). Indictment ¶ 40. Among other activities, members and associates of the Enterprise are alleged to have committed crimes such as attempted murder, narcotics trafficking, and other acts of violence. *Id*. ¶ 41. According to the indictment, Norteño

gang members pledge their allegiance and loyalty to Nuestra Familia and are instructed on its rules, rituals, and obligations. *Id*. ¶ 3. Nuestra Familia enforces its rules and promotes discipline among its members and associates by assaulting and threatening those individuals who violate the rules or pose a threat to the organization. *Id*. ¶ 4. Inside prison and local jails, all Norteños work together to maintain the structure and follow the rules of Nuestra Familia. *Id*. ¶ 10. Nuestra Familia members and associates throughout the prison system and outside of prison communicate through a variety of means, including secret notes called "kites." *Id.* ¶ 9.

In Monterey County Jail ("MCJ"), Norteños are separated from other inmates and are housed together in certain housing units. Indictment ¶ 25. The indictment alleges that if a member of the Enterprise commits a serious violation of the Nuestra Familia rules, he is subject to "removal" from the housing unit at the jail. *Id*. ¶ 10. The purpose of a "removal" is to remove an inmate from the housing unit (and remove his status as a Norteño in general) by killing that inmate or inflicting as much bodily harm as possible. *Id*. ¶ 34. A "removal" involves the stabbing of the target by at least one "hitter" followed immediately by a physical assault without weapons by at least two individuals called "bombers." *Id*. ¶ 36. The purpose of the subsequent beating is to inflict maximum damage to the victim, while giving the hitters time to discard the weapon and wash the blood off or change clothes. *Id.* "Removals" are approved in advance by the Norteño in charge of the facility (unless an emergency arises that requires an immediate removal) after receipt of reports of the violations from members in the housing unit. *Id*. ¶ 10. The "removals" are planned out by the person in charge of a housing unit and members of that housing unit are aware of the "removal" process, and they are required to assist in the removal if requested. *Id.*

Defendant Jasso is alleged to have been an active member of the Enterprise. Indictment ¶ 59. Defendant Jasso is alleged to have been a Norteño street gang member since at least 2000. *Id*. ¶ 56. He was housed in Monterey County Jail, from at least May 19, 2012 through September 23, 2013. *Id.* Jasso allegedly agreed with Enterprise members to commit murder by approving or participating in the "removals" of inmates who committed serious violations of the Nuestra Familia rules. *See* Indictment, Counts 1-3. The Indictment focuses on seven "removals" and charges those in leadership who approved the removals, those who relayed the approvals, the

"hitters," the "bombers," and anyone else who facilitated the attacks. *Id*. ¶¶ 64-71.

The charges in the indictment include:

- Count 1: 18 U.S.C. § 1962(d) – Racketeering Conspiracy (under Racketeer Influenced and Corrupt Organizations Act, ("RICO"))
- Count 2: 18 U.S.C. § 1959(a)(5) – Conspiracy to Commit Attempted Murder in Aid of Racketeering
- Count 3: 18 U.S.C. § 1959(a)(6) – Conspiracy to Commit Assault with a Dangerous Weapon in Aid of Racketeering
- Counts 4, 6, 8: 18 U.S.C. § 1959(a)(5) – Attempted Murder of Victims 5, 6, 7 (respectively) in Aid of Racketeering
- Counts 5, 7, 9: 18 U.S.C. § 1959(a)(3) – Assault of Victims 5, 6, 7 (respectively) with a Dangerous Weapon in Aid of Racketeering

Jasso was charged in counts one through three.

**B.    Trial**

Two Defendants, Jasso and Vincent Gerald Garcia, went to trial. *See* ECF No. 644 ("Gov't Trial Memo") at 1. Trial commenced with jury selection on May 12, 2022. *See* ECF No. 818. The Government proceeded to trial against Garcia and Jasso on only the first three charges from the Indictment. *See* Gov't Trial Memo at 1. Jasso's motion focuses on evidentiary issues related to two witnesses, whose testimony the Court summarizes here.

**1.  Detective Cerda's Bank Robbery Testimony**

On May 25, 2022, the Government called as a witness Multi-Agency Gang Enforcement Consortium (MAGEC) Detective Eden Cerda of the Fresno Police Department ("Detective Cerda"). *See* Tr. Vol. 9 at 1671. Detective Cerda testified about the surveillance and arrest of Jasso in Fresno. *Id.* at 1671-1682. Her testimony included the following:

> Q: And what was the reason you were doing surveillance in that area?
>
> A: We had a tentative briefing with several other detectives from various departments regarding a series of bank robberies that had occurred throughout the state of California. There was reason to believe that one of the individuals was in Fresno, and we were going to conduct surveillance where we believed this individual was, with a

3

girlfriend.

Q: Had that individual already been identified to you?

A: Yes. His name was identified as Jorge Jasso, and he had a *Ramey* warrant that had been issued for his arrest.

*Id.* at 1672:2-12. Later in the testimony, in discussing the stop of the vehicle in which Jasso was traveling, Detective Cerda stated: "We were anticipating the occupants of the vehicle may run due to the nature of the warrant and the crimes that had been committed." *Id.* at 1675:20-22.

Jasso's attorney objected and moved to strike "the last portion of the answer" on the basis that it "assume[d] facts not in evidence." Tr. Vol. 9 at 1675:24-1676:4. The Court overruled the objection. *Id.* at 1676:5. Later that day, Jasso's attorney identified his concerns with Detective Cerda's testimony to the Court and the Government, and he asked to discuss the issue further the following day. *See id.* at 1835-1840.

On May 30, 2022, Jasso moved for a mistrial, asserting that Detective Cerda "told this jury that Mr. Jasso had committed the crime of bank robbery, which is extremely prejudicial" and that no curative instruction could remedy the testimony. *See* ECF No. 853. The Court discussed the motion with the attorneys on May 31, 2022. *See* Tr. Vol. 11 at 1986-1995. Jasso's attorney reiterated that the testimony was "so prejudicial that there's no instruction that could cure that," noting that any instruction may draw more attention to the testimony which, "in itself, would deprive Mr. Jasso from seeking a fair adjudication by the jury." *Id.* at 1986:14-18. The Court agreed with Jasso's attorney that it would be difficult to "excise a small portion" of Detective Cerda's testimony. *Id.* at 1990:15-17. The Court proposed striking all of Detective Cerda's testimony to prevent the jury from considering "what is inflammatory testimony about a string of bank robberies." *Id.* at 1991-1992. Jasso's attorney agreed that "short of a mistrial, that's the most remedial and effective instruction the Court could give." *Id.* at 1994:13-14. The Court ultimately gave the following instruction to the jury:

> You heard testimony from Fresno Detective Eden Cerda that the Court has determined was improper and therefore it is stricken from the record. You may not consider that testimony for any purpose. The United States does not contend that Mr. Jasso was involved in other crimes after 2014, and you are not to consider testimony regarding investigation of other crimes at the time Mr. Jasso was arrested in Fresno. You are instructed that you may consider evidence

4

> of whether or not Mr. Jasso failed to appear in Court in this case and whether that constituted flight after he was accused of a crime.

ECF No. 864; *see also* Opp. Ex. D (ECF No. 898-4) at 2149:8-18.

### 2. Delgado's Testimony and Alleged *Brady* Violation

The Government also called Richard Delgado as a cooperating witness. Tr. Vol. 8 at 1426. Delgado testified about the removal of an individual named Fabian Robledo. *Id.* at 1519-1529. During cross-examination, Delgado stated that in his grand jury testimony, he had incorrectly stated that Jasso was involved in the Robledo removal. *Id.* at 1561. But he had since realized he was mistaken, and Jasso was not involved in the Robledo removal. *Id.* Delgado testified that he had realized he had made a mistake in his grand jury testimony when reviewing the transcript, and he had informed the U.S. Attorney's Office of that mistake. *Id.* at 1561-1562.

Jasso's attorney raised to the Court that day that the Government did not disclose to him that Delgado had informed them his grand jury testimony was incorrect. Tr. Vol. 8 at 1593. The Court allowed Jasso's attorney to re-call Delgado for re-cross examination at any time to remedy the situation. *Id.* at 1596. The attorneys discussed the issue with the Court again the following day. Tr. Vol. 9 at 1609-1616, 1623-1626. Jasso's attorney stated he would call Delgado again that day, *id.* at 1611, and he did so, *id.* at 1628-1633. Jasso later requested a *Brady* instruction, which the Government opposed. *See* Opp. Ex. H (ECF No. 898-8) (Government opposition); Opp. Ex. I (ECF No. 898-9) at 2056-2068 (transcript of oral argument on *Brady* instruction). The Court denied the request for a *Brady* instruction on the record, Opp. Ex. I at 2068, and it followed up with a written Order, ECF No. 856.

### C. Jury Verdict

The jury returned unanimous guilty verdicts against Jasso on Count 1 (RICO conspiracy), Count 2 (conspiracy to commit murder), and Count 3 (conspiracy to commit assault with a dangerous weapon). *See* ECF No. 865.

Jasso seeks a new trial under Rule 33.

## II. LEGAL STANDARD

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Ninth Circuit described the

standard for granting a new trial in *United States v. Alston*, 974 F.2d 1206 (9th Cir. 1992), which it reaffirmed in *United States v. Kellington*, 217 F.3d 1084 (9th Cir. 2000):

> [A] district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal. The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses. . . . If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Kellington*, 217 F.3d at 1097 (internal quotation marks and citations omitted).  The court may consider evidentiary and procedural errors in weighing the motion for new trial.  *See, e.g., United States v. Tory*, 52 F.3d 207, 211 (9th Cir. 1995) (granting new trial in light of four erroneous evidentiary rulings); *see also United States v. 99.66 Acres of Land*, 970 F.2d 651, 658 (9th Cir. 1992) ("A new trial is only warranted on the basis of an incorrect evidentiary ruling if the ruling substantially prejudiced a party.").

### III.  DISCUSSION

Jasso makes three arguments as to why the Court should grant get a new trial: (1) Officer Cerda improperly and falsely testified that Jasso was arrested in connection with a bank robbery, which was prejudicial, MTD at 4-5; (2) Officer Cerda presented evidence that was not previously produced in discovery, *id.* at 5-6, and (3) there was a *Brady* violation in connection with Delgado's testimony, *id.* at 6-7.  The Court addresses these asserted errors in turn.

#### A.  Detective Cerda's Bank Robbery Testimony

Jasso first argues that the testimony of Officer Cerda was false and prejudicial.  As discussed above, Officer Cerda testified that Jasso was arrested pursuant to an arrest warrant in connection with a bank robbery.  *See* Tr. Vol. 9 at 1671-1682.  Jasso argues that "[t]his inaccurate statement by the Fresno Police Officer was so overwhelmingly prejudicial that a new trial is warranted."  MTD at 5.  Jasso notes that the Court provided a curative instruction and struck part of the testimony, but he argues that the curative instruction was not sufficient.  MTD at 4-5 (citing *United States v. Martinez*, 514 F.2d 334, 343 (9th Cir. 1975) (holding curative instructions are

6

sometimes insufficient to remedy prejudicial statements)).

The Government argues that because the testimony was stricken, a new trial is not warranted on this basis. Opp. at 3. The Government asserts that "the Court fashioned a very generous remedy for [Jasso] that struck [Detective Cerda's] testimony in its entirety and affirmatively advised the jury that the government did not contend that defendant Jasso was involved in other crimes after 2014." *Id.* The Government notes that juries are presumed to follow Court instructions. *Id.* (citing *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009)). The Government also argues that the bank robbery testimony "would not have inflamed the jury to such a degree that they could not follow the Court's instructions" given the crimes at issue in the case. *Id.*

Courts "presume[] the jury follows an instruction to consider only the evidence pertinent to a charged crime and to disregard evidence that was admitted improperly." *People v. Turner*, 73 Cal. App. 5th 117, 128 (2021). In fact "[t]he presumption that jurors follow instructions has been described in this regard as the crucial assumption underlying our constitutional system of trial by jury." *Id.* (quoting *People v. Yeoman*, 31 Cal. 4th 93, 139 (2003)) (internal quotation marks and alteration omitted). However, an admonition to the jury may be inadequate "in 'exceptional circumstances,' an inquiry that depends on the facts of the case." *Id.* (quoting *People v. Allen*, 77 Cal. App. 3d 924, 935 (1978)). These are instances in which a court cannot "unring a bell" as to prejudicial evidence. *See Martinez*, 514 F.2d at 343. But "cases have held that brief, isolated, or ambiguous references to inadmissible matter did not cause incurable prejudice." *Turner*, 73 Cal. App. 5th at 129 (collecting cases).

Reviewing all the testimony again, the Court finds that this was not an "exceptional circumstance" in which a curative instruction was insufficient to "unring a bell." Detective Cerda's testimony was a brief and isolated portion of a days-long trial. Further, the testimony was ambiguous as to whether Jasso was involved in the bank robberies. *See* Tr. Vol. 11 at 1988:20-21 (Court stating, "It's so confusing here what the Detective said."). And, given the nature of the crimes for which Jasso was on trial, testimony about bank robberies would be unlikely to prejudice the jury. Because the curative instruction and striking all of Detective Cerda's testimony

7

was adequate to address Jasso's objections, the Court declines to grant a new trial on this basis.

### B. Discovery as to Detective Cerda's Bank Robbery Testimony

Jasso next argues that Officer Cerda's testimony was improper because it introduced evidence—namely the testimony about the bank robberies—that was not produced in discovery. MTD at 5-6. Jasso argues that, as a result, he could not file proper pre-trial motions or conduct an adequate investigation as to this evidence, and therefore the evidence was unduly prejudicial. *Id.* at 6. The Government asserts that this is incorrect, as it provided in discovery a copy of the Fresno police reports relating to Jasso's arrest in 2018, including a report authored by Detective Cerda. Opp. at 4, Ex. E.

The Court agrees with the Government. Information about the bank robberies was provided to Jasso in discovery through Detective Cerda's police report. *See* Opp. Ex. E (ECF No. 898-5) at 5-6. The Court thus declines to grant a new trial on this basis.

### C. Delgado's Testimony and Alleged *Brady* Violation

Finally, Jasso argues that a new trial is warranted because the Government committed a *Brady* violation. MTD at 6-7. As discussed above, Government witness Delgado testified at trial that Jasso was not involved in the removal of Fabian Robledo and that he had mistakenly informed the grand jury that Jasso was involved in that removal. Tr. Vol. 8 at 1560-1562. Delgado testified that he informed the U.S. Attorney that he realized he made this mistake in his grand jury testimony, *see id.*, and the Government did not disclose this to the defense, *see id.* at 1593.

Jasso argues that the Government committed a *Brady* violation, and if Government had earlier informed him that Delgado had testified incorrectly in front of the grand jury, he would have prepared a different defense. MTD at 7. The Government argues that its failure to disclose that Delgado realized he had not testified accurately to the grand jury is not grounds for a new trial. Opp. at 4-6. The Government asserts that Jasso had underlying evidence showing that Delgado's grand jury testimony was false. *Id.* at 5. Further, the Government notes that the Court allowed the defense to re-call Delgado for further cross-examination at a time of their choosing, that the defense did re-cross examine Delgado about the grand jury testimony, and that Delgado testified that he made a mistake in his grand jury testimony. *Id.* The Government argues that the

8

defense's ability to re-cross examine Delgado was sufficient to remedy the initial non-disclosure. *Id.* at 5. And the Government points to the Court's statement that the Government gave the defense sufficient information for "a robust cross-examination." *Id.* at 6.

As discussed above, as a remedy, the Court required the Government to secure Delgado's further appearance so that Jasso's attorney could conduct further cross-examination at any point in the trial, Tr. Vol. 8 at 1596, which the attorney did do, Tr. Vol. 9 at 1628-1633. Jasso made a motion for a *Brady* instruction during trial, which the Court denied. *See* ECF No. 856. The Court decided that there was no prejudice to Defendants from the nondisclosure "because the Court provided immediate remedies to reduce or eliminate any prejudice to them." *Id.* at 2.

There are three elements to a *Brady* prosecutorial misconduct claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). "District courts have discretion in shaping the remedies for *Brady* and *Giglio* violations. Remedies for such violations, however, 'should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Garrison*, 888 F.3d 1057, 1065 (9th Cir. 2018) (citation omitted) (quoting *United States v. Struckman*, 611 F.3d 560, 577 (9th Cir. 2010)).

Because the parties agree that the first two elements are satisfied, *see* ECF No. 856 at 2, at issue here is the third element: prejudice. "[N]ot every violation of [the duty to disclose] necessarily establishes that the outcome was unjust." *United States v. Howell*, 231 F.3d 615, 626 (9th Cir. 2000) (quoting *Strickler*, 527 U.S. at 281). "[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* (quoting *Strickler*, 527 U.S. at 281); *see also United States v. Sedaghaty*, 728 F.3d 885, 900 (9th Cir. 2013) (focus of *Brady* inquiry is "whether the withholding of evidence undermines our trust in the fairness of the trial and the resulting verdict").

The Court finds that there was no prejudice to Jasso from the Government's failure to disclose Delgado's admission about his inconsistent testimony. The Court looks to *Howell*. In that case, the Government failed to inform the defendant about identical inaccuracies in two different law enforcement reports, both of which stated that money allegedly received from drug sales had been found on the person of his co-defendant, when it was actually found on him. *Howell*, 231 F.3d at 623. The Government realized before trial that both reports were incorrect, but it did not inform the defense. *Id.* The Ninth Circuit found that there was no prejudice, noting that (1) "the defense was able to effectively cross-examine the witnesses about the inconsistency between their trial testimony and the nondisclosed evidence" and (2) "the prosecution introduced significant evidence independent of the evidence withheld by the government" to support the verdict. *Id.* at 626-27. On that basis, the court concluded that "there is no reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 627.

Here, the Court provided a remedy that is adequate under *Howell*. The Court informed defense counsel that he could re-call Delgado at any point, ensuring he would have time to prepare for an effective cross-examination. Tr. Vol. 8 at 1596. The Court also ensured that there was no remaining *Brady* material that had not been disclosed to defense counsel prior to the re-cross examination. Tr. Vol. 9 at 1611-1614. The defense was able to effectively cross-examine Delgado about the inconsistency between his trial testimony and grand jury testimony. *See id.* at 1628-1633. The Court further notes that the defense had in its possession evidence that showed Delgado's grand jury testimony was incorrect, as they had a Monterey County Jail roster for the date of the Robledo removal that did not have Jasso listed as an inmate on the pod. See ECF No. 356 at 3. While this fact does not excuse the Government's failure to disclose Delgado's admission that his grand jury testimony was incorrect, it further reduces any prejudice from nondisclosure. Finally, the Court notes that there was significant evidence independent of the evidence withheld by the Government that supported a guilty verdict against Jasso. Therefore, the Court finds that a new trial is not warranted on the basis that the Government withheld Delgado's admission that he provided inaccurate testimony to the grand jury.

### D. Conclusion

The Court finds that Jasso has failed to identify evidentiary errors that, considered independently or cumulatively, would warrant a new trial. *See Tory*, 52 F.3d at 211 (considering the "cumulative effect" of four evidentiary errors in granting defendant a new trial). Consequently, Jasso's motion for new trial is DENIED.

## IV. ORDER

(1) Jasso's motion for new trial is DENIED.

(2) This order terminates ECF No 886.

Dated:  November 8, 2022

_____
BETH LABSON FREEMAN
United States District Judge

11